The next case for argument is Romoff v. General Motors. I believe it's Mr. Gowdy, is that correct? Good morning. Good morning. You're a lawyer from Jacksonville, Florida. Well, welcome. Thank you. Is our weather different than yours today? It's about the same, Your Honor. So I'd be happy to trade you our humidity in the summer. Indeed. May it please the Court, I'd like to reserve five minutes for rebuttal. When consumers purchase or lease a new GM vehicle, they see on the sticker the manufacturer's suggested retail prices and a separately listed destination charge. Would a reasonable or average consumer likely believe that the destination charge was no different than the suggested retail prices and that both include a substantial profit for GM? Well, counsel, in this situation, that charge is the charge made to the dealer. Correct. Where does the customer, do you have anything in the record to show that you went to the dealer and said, did you really pay that amount? Well, here on a complaint, not like a... Well, because I don't file a complaint without some underlying investigation. Absolutely. And it's a pass-through charge that the dealer, and this was not raised below, I would like to also point out that the dealer... Well, if it wasn't raised below, we don't even know about it. Well, but it would be fair to us if this is a concern to the district judge, if we'd be allowed to plead about this issue. You plead about this. In paragraph two of the complaint, it says that destination fee is charged to the dealer and passed on to the purchaser or lessee of the vehicle. So your complaint is predicated on the theory that the dealer pays the charge. But if the dealer does pay the charge, then whether between the manufacturer and the dealer, the price is unfair, the dealer pays the charge. Right, but the sticker holds that. The sticker is for the consumer. Well, the sticker is required by the federal law to be placed on the windshield. Absolutely. But it can't be placed deceptively. Federal law doesn't allow it to be placed deceptively. Is there any evidence, I know this is early on, but do you have anything in the pleadings that have been submitted to the court that suggests that when people buy cars that they're sophisticated enough to even break down the subparts? Well, I don't know how sophisticated a buyer I am, but I bought a number of them over the time. And I just look at the bottom, what's down at the bottom, and then we negotiate from there. The subparts really don't matter. I don't say, well, I want you to take off this, I want you to take off that. You take the number, the bottom line number, and you say, like, I'm a member of AAA, I get this discount. I've dealt with you before. I think I get another discount. And I think I'm a pretty smart guy. Why should I be concerned about subparts of this when, in fact, at least in my judgment, the way most people deal with car dealers is they've got this bottom line, and they try to get that reduced. They don't break it down into subparts. Do you have any evidence that you're going to present or that you presented to the district court in connection with the analysis of the complaint that suggests that the average consumer is somehow really deceived by the separate breakdown of the distribution charge? Well, I have a few points in response. One, you are very smart, Your Honor, and I would say that you're not an average or reasonable consumer. And that is the standard, and you have to look at the California and New Jersey case law for that, not what we as lawyers might think and know. And it was alleged in Paragraph 7 of the complaint that plaintiffs would not have purchased or leased or would have paid less had they known the destination charge was not related to the cost. And you have to accept that at this stage. As far as evidence, I would point the court, even though we're at the pleadings, to page 3 and 4 of our reply brief where we cite multiple consumer publications, which is what you look at when you go to buy a car, not Webster's Dictionary. And those all say that when you go in, you should understand that a destination charge is to cover the cost of the manufacturer to deliver the vehicle to the dealer and that it's a mere pass-through and that it's non-negotiable. And therefore, if you're going to negotiate, that's not part of your negotiations. You're going to negotiate on the part of it with the MSRP. The dealer actually paid. I mean, suppose the actual transportation cost was $700. And they mark it up to $1,000 and make the dealer pay $1,000. And the dealer's really paid $1,000. Is the dealer – your whole theory is there's this overinflated cushion that the consumer can get some of that back. But if the dealer paid the $1,000, the dealer's not going to give up any of the $1,000. Well, but our whole theory isn't about – we're not suing the dealer. We're suing here. But your theory is that the consumer would have gotten a lesser price. They don't buy from the manufacturer. They buy from the dealer. And that's your whole point is the dealer pays this. The point is, first of all, was a reasonable or average consumer, not an Article III judge, likely deceived? And then would they have acted differently? And I just read to you in the complaint where the ordinary average consumers who filed this complaint said that they would have tried to negotiate and paid less. But you also pleaded that the dealer actually paid the amount. Sure. And so there's no leverage to get money from the dealer. Yes, there is because you could say if that is actually profit for the manufacturer, I'm going to try to get even lower on the MSRP portion. The dealer is going to, what, go back to the manufacturer and say you've got to reduce the $1,000 and kick some back to me? Well, Your Honor, respectfully, you're putting this in the perspective of the dealer. The question here is what would a reasonable or average consumer – would they be deceived? Would they be likely deceived? And then is there harm? We've alleged the harm. You've alleged a lot of things, and my question still is what investigation did you do to determine whether any of these alleged facts are true? We investigated, Your Honor. We researched. That's right. You researched, and you said, well, other places it's only 30% or $340 versus. We compared to other manufacturers. It doesn't answer the question of whether or not the dealer paid it. I guess, and I understand the panel's hung up on this. I guess what I would try to say, and maybe I can give you a hypothetical that will help you understand this outside the context here. What the dealer paid or not paid doesn't matter. Those two matter. Well, I disagree, and the reason I disagree is that I am put, as a consumer, I'm put at a negotiating disadvantage because I don't have the same information. I don't know that that destination charge is pure profit. You don't know whether it's a real charge or not. There's no privity between your client and the company. Right, but the question is, is the representation on the sticker, is it deceptive or likely to mislead? That's the question. We don't have to have privity. This is an abrasive contract case. The question is, is it likely to deceive? And if I can follow up on what my colleague has asked here, the district court went to a dictionary. So let's just say we agree with you that was not the appropriate thing to do. A lot of other things you could have looked at, but you all seem to rely on the McKell case. So if we're looking at the UCL and the CLRA, you say, okay, this is a perfect example. A California court has decided that listing something in an escrow is comparable here. Now, I've done lots of real estate transactions, and that's a specifically negotiated deal. When you buy or sell a property, you are told certain things cost certain things, and you can ask about that or not. But it's not a blanket thing. It's just listed per your individual deal. Why is the McKell case applicable here? Isn't it quite a different situation than what you're arguing? Now, I'll quote from McKell. The great other man of plaintiff's complaint is not that defendant's fees are too high. It is that the defendant, Washington Mutual, leads borrowers or consumers to believe that it's charging them for the cost of certain services it provides. That's a fee that they paid, right? That is a fee that they paid, but the dealer pays. But the point is that it's paid by the dealer but passed on to the consumer. You have a plausible inference from the facts you've pleaded, which is that the dealer pays it, that if they knew this piece of information about the relationship between the manufacturer and the dealer, they could get more out of the dealer, and I don't see how the inference is plausible. I guess the way it would be is if you knew that that entire $1,500 was profit, you as a consumer would say, I'm going to ask for $1,500 immediately off the MSRP because they're already getting their profit through there. If I could give you an example, I call you from San Francisco. I tell you that I'm going to sell you a widget but that my shipping charge is $20. And therefore, I can't sell it. I'm absolutely going to charge you that $20. I ask you to pay $80 for it. We negotiate back and forth, and we agree on $60 for that widget. And so you pay me a total of $80. Later, you learn that I lied, that the shipping charge I incurred was only $5. If you had known that, had I been truthful up front, you could have paid less overall. But I lied to you, and the destination charge is a lie because it's framed in a way, and it's not a lie. All we have to show, which is unclear, is that it's misleading. It's misleading because it's put next to a price. And so a reasonable consumer would think that's a cost, not a profit. And if I know that it's a profit when I'm dealing with the dealer, I'm going to use that to my advantage. That's all I have to show. I don't have to show what the dealer may or might not have done. This is a consumer claim. I just have to show that the manufacturer was likely to, that their action was likely to mislead, and that what we alleged, that we would have acted differently, and we would have tried to pay less. Not that we would have actually been successful. I'm sorry. It's entirely your time, but you wanted to save five minutes. Oh, I did, and I passed. So do you want to save the balance of your time? I will, yes, Your Honor. Very well. Thank you very much. You're welcome. All right. So now we have Mr. Azadian, is that correct? Yes. Good morning. Good morning, Your Honors, and may it please the Court, my name is James Azadian, and I represent Appellee General Motors, LLC. I'd like to address each of the points, or each of the questions, rather, that the panel had raised during the opening argument. First, this Court should affirm the dismissal of the complaint. Appellant's claims suffer from a fundamental flaw. That's the destination line item is one of three line items that appear on the Monroney window sticker of the vehicle, which makes up the total sticker price that also appears on the window sticker, which, as appellants concede, and this is very important, that a reasonable consumer would expect to include profit. They concede that. So any alleged profit in the destination line item that the dealer has already paid to the manufacturer is immaterial as a matter of law, and that's Hudson v. Morris that this Court has decided and which was cited by Judge Hayes in his decision. It makes no difference whether profit is included in the MSRP line item, the optional equipment line item, or the destination line item, or for that matter, any combination of those three. The delivery charge as listed is $2,000. And, in fact, it was really only $200 it cost, and $1,800 is completely padded. If the person going into the dealership knows that, wouldn't they then press to get, if they can't get that charge down, then to get the price on the car down, to get the whole total package down? That's his point. Yes, Your Honor, and I don't think that that is a reasonable inference, and as Judge Hayes pointed out in his decision, that is what the. . . Why is he that reasonable? I mean, they have some. . . All right, if they've paid the full dollar amount of the delivery charge, there is room to play between the sticker price and whatever unknown amount they paid, actually, to get the physical vehicle. In that cushion, wouldn't they have some leverage if they knew that the delivery charge was bogus? No, Your Honor, because it is still very much a hard pass-through charge. This is what the dealer has paid out of its own pocket. It's already left the dealer's pocket by the time the window shopping occurs on that vehicle. I'm not sure I understand this. So you're saying that whatever the distribution charge that shows up, that the dealer has already paid General Motors, in this case, that amount of money, is that correct? Yes, Your Honor, and in fact, each of the trade publications that are cited in the reply brief state exactly that. So from your perspective, there is no deception. There is no profit in there. It's simply what the dealer has paid to General Motors. There's no play in the joints. I think your opponent has said that arguably that's a phony figure and that it's not what was charged. Your representation is, and I assume that's what you had in your answer, or your 12 v. 6, that in fact this is what was paid. There is no deception. Is that correct? That's correct, Your Honor. Now, even as most generously construed, that pleading, the complaint in this case, even if we were to assume that it's all profit, let's just assume, because that's what Judge Hayes generously construed and said, let's assume this destination line item has little, excuse me, has little cost or no cost at all. It's just all profit. It still would not make a difference. There is play in the joints on the price of the vehicle, and why wouldn't, knowing that the manufacturer is already getting an awful lot of profit on the delivery charge, which is bogus, why wouldn't that give you some leverage in negotiating over the price of the vehicle? Because, Your Honor, for the simple fact that the consumer, the average reasonable consumer, does not know, the idiosyncratic customer does not know where the profit is coming from, whether it's under the MSRP, whether it's under the optional additional line item, or whether it is under the destination line item or some combination or all three. They just don't know. And, in fact, under California, his whole theory is that they should know that the destination charge is mostly profit or whatever percentage upon it and say it's 100% profit. How would it not strengthen your hand as a consumer in a car negotiation in saying, look, they already got $2,000 of pure profit there. You're going to need to come down on the vehicle. Because it's not the dealer who is making the profit, Your Honor. And I hate to sound like I'm making a circular argument, but because these arguments are fairly circular and self-contradictory, I must make that argument. That is a hard cost that has already been paid by me. Does the complaint say anything about whether or not there is a similar fixed hard cost vis-a-vis the vehicle? Or is there play in the joints between the dealer and the manufacturer on the vehicle? It doesn't say that. In fact, Your Honor, just the opposite. What it says is that, and this is on page ER107, paragraph 27 of the complaint, it says that the destination charge is separate and apart from the base MSRP. And it is an add-on. And then they go on to say this is chicanery. They would have the destination charge, Your Honors, rolled into the MSRP, which would then cause the real problem of violating ADA. But the MSRP isn't what the dealer pays. That's the suggested retail price to the consumer. In the negotiation, the mystery is always what the dealer actually paid and what the floor is above which you need to go. And his whole point is that this would arm the consumer in the negotiation over the vehicle, even if the dealer cost is non-negotiable and fixed. And the answer to that is, Your Honors, that there is nothing to suggest that GM stated, and there's no allegation to the contrary, that GM stated that this line item is devoid of profit. Again, assuming most generously that that allegation is true in the complaint at the 26th stage. It sounds like the reality is, from your perspective, is the destination charge is something the dealer has already paid. There's no fluff in that. Whatever GM made out of it, that's what they paid. Right. The average consumer that comes in knows that the car dealer is going to make a profit or there wouldn't be a business. Correct. Anybody knows that. Correct. So does it really matter? Somebody's making a profit. The question is, how much can you reduce the profit of the dealer by negotiating? And you're saying, if they focus on the destination charge, the dealer can legitimately say, Well, we paid this. We've paid this to General Motors. We don't have any fluff here. You know, we've got these other things. I'm sure we're going to make a profit. We want to get as much from you as we can. But that's pretty competential. But their focus is the destination charge. So you're saying they've admitted the dealer pays it. You've confirmed that today. There's no there there from your perspective. Correct, Your Honor. And remember, the basis of this claim, the grovelment of the claim, as they call it, is deception. There is no deception occurring here because the dealer did pay that to GM. So what do we do with the general rule that you take the allegations as true for purposes of 12b-6? And even then, Your Honor, there is no deception for the reason I just stated. In fact, if you look on page 5 of the reply brief, appellants double down on their allegation. And I quote, GM requires that the specific amount of the destination charge be passed through to customers who are not allowed to negotiate the amount as part of the class vehicle's overall price. It's right there. And that's the end of the quote. Their own allegations, therefore, Judge Kelly, defeat the first theory of harm because appellants could not have negotiated to pay less if, as they allege, they weren't free to negotiate to pay less. Now, I want to make mention, if I could, about the online trade publications in their reply brief because this defeats their other theory of harm, that appellants wouldn't have purchased the vehicles at all and instead would have bought a different make of vehicle. Setting aside for the moment, appellants didn't cite the online publications in the district court and the first time they do so on appeal is in their reply brief. Those articles show that the destination charges paid by the named plaintiffs are at the low end, the low end of what is customarily charged in the industry. In other words, if plaintiffs had made their purchase elsewhere, they would have paid the same or a higher amount according to the very publications that they cite in their reply brief. Even if some idiosyncratic consumer would claim to be willing to pay the same or more elsewhere because there is profit, alleged profit, in the destination line item, that idiosyncratic consumer cannot complain of having been harmed by the fact that there was profit in the destination line item. And as Judge Kelly noted and as Judge Collins noted during opening argument, appellants' theories also make no sense because of their acknowledgement that the dealer has paid the destination line item, that money has in fact left the dealer's pocket. I would like to, in the time remaining, address Mattel and also, if there is time, to just focus on the legislative history, which I, if the court is at all interested in the legislative history for ADA and why we have these three line items. Appellants do actually rest their entire appeal on their criticism that the district court's ruling did not cite Mattel, the California Court of Appeal decision. And the full quote name style is Mattel versus Washington Mutual. And we do think that Mattel is inapplicable here. It involved a secret fee on home loans that the bank lender did not disclose. Let me emphasize that. The bank lender did not disclose until the time of the loan in a home's closing. In appellant's complaint here, they say that the destination line item was expressly disclosed on the face of the window stickers for both vehicles, literally at the window shopping stage. There was no secret charge or add-on charge. The destination line item that appears on both of appellant's vehicle stickers is the amount the manufacturer has charged the dealer and which the dealer has already paid the manufacturer. It is disclosed up front just as ADA, the Automobile Information Disclosure Act, requires on the window sticker. Now, ADA actually prevents the Mattel problem. And that kind of occurred to me as I was preparing for oral argument. But compliance with ADA will actually prevent the Mattel scenario. This gets back to the legislative purpose. If in Mattel they had told the people that the cost is X dollars, when in fact it was Y dollars, why wouldn't the result be the same? The result in Mattel would have been the same. In other words, the claims would have been sustained and moved forward in Mattel. It's a deception that they're complaining about. And the deception is also based, as the court found there, on the violation of the federal regulations and the federal statutes that cap certain closing costs and certain reporting fees in that case. And we don't have that here. Well, again, what do you do with the allegation? They've made the allegation, even though you say that's not correct. Your Honor, and I don't mean to be simplistic. Be simplistic. It's almost like a legal non sequitur. That's how I view that allegation. From your perspective, the complaint says, here's the destination charge. The dealer has paid it. There's no deception from your perspective. You can't have one and the other. Either the dealer paid it or they didn't. With pay, there's no deception. So it's inconsistent, is what you're saying, right? It's self-contradictory and inconsistent, yes, Your Honor, and therefore implausible under the Iqbal standard. In the short time I have remaining, let me just slip into legislative history. I want to let you know, I don't know the reason why Congress required the destination fine item to be separately listed. That might be a question that has crossed your mind. Why did Congress say, let's break up these things and let's put these all on a sticker? But I do know, as I mentioned, that it avoids the Mackell problem, that secret fee, that add-on at the very end, right, when there's a closing or a transaction being made. And as I mentioned, compliance with ADA prevents that Mackell surprise to the consumer. But from my research of ADA's legislative history, I've not come across the purpose for the destination line item separate from the purpose for the window sticker as a whole. And this gets back to the opening question that Judge Smith made. What the legislative history shows on the overall purpose is in a single house report for the original bill. And that was dated June 24, 1958, stating, and I quote, the primary purpose of the bill is to disclose the manufacturer's suggested retail price of the new automobile so that the buyer will know what it is. The disclosure of the manufacturer's suggested price will help to minimize the advertising extravagances indulged in by some automobile dealers, end quote. So Congress's concern was that buyers at the time were in the dark about this basic information, MSRP. Unless the Court has any further questions, I see my time is up. And I want to thank the Court for the opportunity to present oral arguments. Any questions for my colleague? I think not. Thank you very much. Very well. So we have rebuttal from Mr. Gowdy. Thank you, Your Honor. I want to start to make sure the Court doesn't confuse two separate concepts. I think the entire discussion this morning has confused those two. There's harm or injury, which is what all these questions are about the dealer. And there's deception. And I hear a lot of back and forth as if those are the same, and they're not. Let me just be sure I understand your position. I read the complaint to say that the dealer has paid the destination charge. Do you agree with that? I agree with that. But that doesn't go to the deception. Well, okay. But if the manufacturer has charged it and the dealer has paid it, and that's what's listing, where's the deception? The deception is that the consumer believes that that is a pass-through cost, not a pass-through profit. Why does that matter? I mean, if the dealer paid it, it is a fixed sum. It's not a difference between 1,000 and 700. It paid it. Because when we negotiate, we like to know what the other side might be getting for a profit and what their actual cost is. And we're saying there's deception because the way it's actually sold to the dealer, too, but we're not representing the dealers, is that there's a deception and that that's a cost when it's not. But the harm is set. You're talking about the harm, Your Honor. No, no, I don't see the deception. In McHale, for example, there was a deception. They said there was a charge of X. In fact, it was Y. Totally different. In this case, the destination charge was X. That's what the dealer was charged. Where's the deception? Okay, so in McHale, it said, I read it to you earlier. I'll read it again. You're divorcing it from the facts. I don't know what the dicta said. What are the facts? This is the facts of the gravamen of the plaintiff's complaint. That's the sentence I'm reading from McHale. I love that word, gravamen. It's not that the defendant's fees are too high. It's not that they were too much. And I agree with you. In this case, it doesn't matter what it is. You've alleged that the dealer was charged X and they paid X. There's no deception there. So if the customer looks at that and says, wow, I wonder if the dealer is going to make any money. They really didn't pay this much. It doesn't matter. I would respect that you're approaching this from a sophisticated consumer and not a reasonable or an average consumer. And I think Judge Collins was, I think, getting our argument, which is that if we as a consumer. A less sophisticated shopper. He's putting himself in the shoes of a reasonable or average consumer. All of us as lawyers need to try to not use our lawyer hats here. That's what I'm in all seriousness trying to put on. And if we alleged in paragraph 7 that we would not have bought it, we would not have bought the vehicle had we known this. And I feel like I want to point the court in my brief time to Hinosa and Kwikset. Those are the economic harm cases. They're briefed at Blue Brief 3638-2325. This is not the ruling that was below. The ruling below was that destination charge was not deceptive. Could I say one thing about the AIDA? If you really quickly, because otherwise there's a trap door. Okay. The statute, the plain text, the amount charged, if any, to such dealer for the transportation of such automobile. There is no requirement that they charge a dime for the destination charge. But they do it to the dealer. And the dealer paid it, as you allege. What's your complaint? I can't explain it any better than I have, which is that we would have been in a better position to negotiate. You would have been in a better position. That's all we have to prove. If you found the car had been wrecked and fixed. Well, that's all we have to prove. Your result? The destination charge is the destination charge. All I can say is what you're saying, what both you and Judge Smith are talking about, is whether I had any harm. And you're contrary to this court's decision in ANOSA and the California Supreme Court's decision in CWCSA. Okay. With that happy note, we will end this fine conversation. Thank you, Your Honor. Thank you very much. We appreciate your being here and training and doing business with people in California, because we need your help. And we wish you a good trip back home. The case just argued is submitted. Thank you, Your Honor.
judges: Kelly, SMITH, COLLINS